438 So.2d 290 (1983)
Ken RAINER
v.
STATE of Mississippi.
No. 54472.
Supreme Court of Mississippi.
October 5, 1983.
Franklin C. McKenzie, Jr., Laurel, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Jones County wherein the appellant, Ken Rainer, was found guilty of possession of stolen property. Rainer was sentenced to four (4) years in the custody of the Mississippi State Department of Corrections. We reverse.
Ken Rainer was indicted for possession of stolen property, 350 cases of Prestone antifreeze allegedly taken from Gibson's warehouse. Rainer has never contested the fact that the antifreeze in his possession was stolen; however, he does deny that he had any knowledge it was stolen until after his arrest. Therefore, the key issue at trial was whether Rainer had knowledge that he was purchasing stolen antifreeze.
*291 Daniel Blackledge, director of security for Gibson's Department Stores, testified that Gibson's received an anonymous letter stating that someone was stealing antifreeze from their warehouse. Rick Shadix, a buyer for Gibson's, testified that he became concerned about Gibson's inventory when he was in the B & B Muffler Shop and noticed Prestone antifreeze on sale for $3.50 per gallon. This caused him to be suspicious because he was aware that Gibson's paid $4.33 per gallon wholesale. Shadix purchased a case of Prestone antifreeze from B & B and matched the type numbers with those in Gibson's warehouse. He testified that the case of antifreeze he purchased at B & B Muffler Shop had an identical type number to that in the Gibson warehouse. An inventory revealed that one thousand cases of antifreeze were missing. Blackledge's investigation led to an admission by two Gibson employees, Corey Barker and George Allen Smith that they had taken the antifreeze.
Barker was the chief witness for the prosecution. He admitted that he had stolen the antifreeze from Gibson's warehouse over a period of two to three weeks, taking fifty cases of antifreeze five or six times. Each time he would load a Gibson's delivery truck with the antifreeze and take it to a store owned by Rainer's father. There Rainer would pay him $350 cash for the fifty cases of antifreeze. Barker testified that Rainer never knew where the antifreeze came from, but that Rainer's father told him, in Rainer's presence, to quit bringing the antifreeze over or they would get in trouble. Barker also testified that after confessing to Blackledge he called Rainer and told him, "We have been caught doing this." On cross-examination it was revealed that Barker had pled guilty to embezzlement and had been promised that the state would recommend probation and a fine, but he had not been sentenced at the time of Rainer's trial. Barker admitted that he had given three conflicting statements concerning the theft of the antifreeze, originally confessing to stealing all one thousand cases, but later recanting and admitting to taking only three hundred fifty.
The owner of the B & B Muffler Shop, E.T. Barefoot, testified that Rainer asked him if Barefoot would allow Rainer to place some antifreeze in his muffler shop for sale. This is the antifreeze that Shadix saw and purchased in the muffler shop. Jimmie Earl Bunch, a part-time security guard for Gibson's testified that he followed Barker after he admitted taking the antifreeze. Bunch testified that Barker made a phone call and went to lunch. Bunch was then assigned to go to Rainer's father's curbstore and see if any antifreeze was brought in or taken out of the store. Bunch testified that he watched Rainer come out of the store and hire two people to help him load a truck with antifreeze. He followed Rainer around town to a truck stop where Rainer went in and reemerged a few moments later. Rainer did not unload any of the antifreeze but instead took it back to his father's curbstore.
The final witness for the state was James E. Davis. Davis admitted that there was "bad blood" between himself and Rainer because Rainer called his daughter a whore and fired her from a job. Davis testified that Rainer had asked him if he knew where he could get rid of any antifreeze and in response Davis delivered antifreeze to some people in Sandersville. Davis also testified that when talking with Rainer about the antifreeze Rainer said, "I told the boy that I would take all that he could steal." Davis stated that he was present when Rainer's father told Rainer and the boy delivering the antifreeze, "Boys, you had better quit it, you are going to get caught." Davis had been convicted eleven years prior of possession of stolen property.
The defense introduced testimony that it was not unusual for the curbmart to pay for its purchases in cash. Mr. Randolph Pickett testified that he was present when Barker arrived with a truckload of antifreeze and that he heard Rainer ask Barker "Where is this stuff coming from" to which Barker replied, "My company gave it to me to disburse of it because it was getting old, *292 was outdated and the cartons it was in was deteriorating." This testimony was corroborated by James Perkins who testified that Barker came to sell antifreeze at the curbmart and that when there he said it was damaged merchandise and that he was selling it for Gibson's. Perkins testified that Barker said that Gibson's had allowed their sales people the first opportunity to sell their old or damaged goods. Rainer did not testify in his own behalf and at the close of the evidence the jury returned a verdict of guilty.
Rainer's first assignment of error is that the trial court erred in denying his motion for a directed verdict made at the close of the state's evidence. Because Rainer put on evidence after the denial of this motion, he is precluded from raising the issue on appeal. Robinson v. State, 418 So.2d 749 (Miss. 1982).
Rainer next assigns as error the lower court's refusal to grant his motion for a directed verdict at the close of all the evidence and refusal to set aside the verdict and enter a judgment of acquittal or in the alternative grant a new trial. Rainer argues that the state failed to prove beyond a reasonable doubt that at the time he received the property he knew that it was stolen. Rainer argues that the testimony of Barker, as an accomplice and felon, must be viewed with great caution and suspicion. It is true that the uncorroborated testimony of an accomplice will support a conviction, but only if that testimony is not unreasonable, improbable, self-contradictory or impeached by an unimpeached witness. Barker's testimony was certainly impeached by that of both Randolph Pickett and James Perkins who testified that they heard Barker tell Rainer that he was selling the antifreeze for Gibson's as it was old or damaged. Also, Barker's testimony was self-contradictory when compared to the statements he had given the police. In Feranda v. State, 267 So.2d 305 (Miss. 1972), this Court held that the testimony of an accomplice which is impeached by prior statements given to the police seriously devalues its credibility. Therefore, Barker's testimony must be viewed with great suspicion. In fact, the only testimony that substantially corroborates Barker's story is that of Davis. Davis' testimony was that Rainer said he told the boy delivering the antifreeze that he would take all the boy could steal. Davis also related that he heard Rainer's father tell "the boys" that they had better quit or that they were going to get caught. Davis' testimony is also suspicious in that he had previously been convicted of possession of stolen property and he admitted that there was "bad blood" between him and Rainer. Although this evidence is slim, we must accept all reasonable inferences as true when this Court reviews the sufficiency of evidence. Hyde v. State, 413 So.2d 1042 (Miss. 1982). Therefore, this assignment of error standing alone does not warrant reversal.
Rainer's next assignment of error regards the jury instructions. He argues that there were a number of errors associated with the granting of Instruction S-2. That instruction reads:
The defendant, KEN RAINER, has been charged by an indictment with the crime of receiving stolen property for having bought or received 350 cases of type AF542 Prestone II antifreeze which had been feloniously taken from Gibsons Products Company of Laurel, Inc., knowing that the property had been so taken.
If you find from the evidence in this case beyond a reasonable doubt that the 350 cases of type AF542 Prestone II antifreeze, being of value, was the personal property of Gibsons Products Company of Laurel, Inc., and was feloniously stolen and taken away from Gibsons Products Company of Laurel, Inc., and on or about the 10th day of November, 1981, the Defendant, KEN RAINER, did buy and receive the aforementioned antifreeze, and the Defendant had good reason to believe from facts and circumstances in evidence that the 350 cases of type AF542 Prestone II antifreeze had been feloniously stolen, then you shall find the Defendant guilty of receiving stolen property.

*293 If the State has failed to prove any one or more of these elements beyond a reasonable doubt then you shall find the Defendant not guilty. (Emphasis ours)
Rainer first argues that the instruction is defective because it allows the jury to find him guilty if it determines that he had "good reason to believe from facts and circumstances" that the property was stolen rather than actual knowledge. His position is that this instruction allows the jury to find him guilty if it finds that he violated the reasonable man standard even in the absence of actual knowledge. The state argues that the instruction was cured by the granting of Instruction D-10 which instructed the jury that Rainer must have known that the antifreeze was stolen at the time he received any of it. Rainer also argues that S-2 was defective in that the first sentence assumes as true all of the material facts of the charge. We have previously held that the granting of an instruction which assumes as true material facts which were for the determination of the jury is reversible error. Church v. State, 288 So.2d 855 (Miss. 1974); Eubanks v. State, 227 Miss. 162, 85 So.2d 805 (1956). There can be no doubt that the first sentence of S-2 does assume as true the fact that the antifreeze was stolen, a material fact for the determination of the jury and it was therefore defective whether Rainer contested that fact or not.
Rainer also assigns as error the refusal of the trial court to grant Instruction D-2 which instructed the jury that in their deliberations they should not consider the indictment as evidence of guilt. The state counters by arguing Instruction C-03 defines the evidence which the jury was to consider and that it impliedly excludes the indictment. Instruction C. 03 in pertinent part reads:
The evidence which you are to consider consists of the testimony of the witnesses and the exhibits offered and received. You are also permitted to draw such reasonable inferences from the evidence as may seem justified in light of your own experience.
That instruction fails to instruct the jury that the indictment was not evidence, in fact, it mentions that arguments, statements and remarks of counsel are not evidence, but nowhere does it mention the indictment. The jury received no instruction concerning the indictment whatsoever. This Court has previously held that when the jury is permitted to take the indictment into the jury room it should be instructed that the fact that the defendant has been indicted is not evidence of the facts charged in the indictment and that the indictment should not be considered as evidence of guilt. Wood v. State, 275 So.2d 87 (Miss. 1973). While the record does not reveal whether the jury was given a copy of the indictment, they were certainly reminded of it through Instruction S-2. Recalling that Instruction S-2 referred to the indictment in a manner which assumed as true material facts which were within the province of the jury to decide, that instruction was equivalent to handing the jury a copy of the indictment. The granting of Instruction S-2 coupled with the denial of Instruction D-2 require that we reverse.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and HAWKINS, PRATHER and ROBERTSON, JJ., concur.
ROY NOBLE LEE and BOWLING, JJ., not participating.