# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-KA-00048-SCT

*JOHN K. OSBORN A/K/A JOHN KENNY OSBORN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/20/94 |
| TRIAL JUDGE: | HON. GEORGE C. CARLSON JR. |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID WALKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | WILLIAMS, ROBERT L., |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 4/10/97 |
| MOTION FOR REHEARING FILED: | 4/17/97 |
| MANDATE ISSUED: | 6/12/97 |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. John Kenny Osborn appeals a December 20, 1994 order of the Panola Circuit Court denying his Motion for Leave to File an Out-of-Time Appeal in Forma Pauperis pursuant to Miss. Code Ann. § 99-39-1. Finding that Osborn was advised by the circuit court of his right to appeal and that after discussing the matter with his attorney following his sentencing hearing, he signed a statement indicating that he did not wish to appeal his case, we deny the relief now sought and affirm the order of the circuit court.

## I.

¶2. John Kenny Osborn was found guilty of murder by a jury of the Panola County Circuit Court on September 24, 1991, and sentenced by the court to life in prison. At the October 31, 1991 post-trial motion and sentencing hearing, the circuit court overruled Osborn's motion for a j.n.o.v. or, in the alternative, for a new trial. The circuit court advised Osborn of his right to appeal, stating:

So, based on the murder conviction, and the life sentence you now have, and recognizing that certainly you would have every right to appeal this matter to the Supreme Court of Mississippi, then if the matter be appealed, then the Court would at this point have to deny bail. So, I'll turn you back over to Panola County authorities.

Immediately after the sentencing hearing, Osborn and his sister, Betty Osborn, were advised by his attorney of his right to appeal. He signed a handwritten statement, witnessed by his sister, stating:

I, John Kenny Osborn, have this day been sentenced to serve a term of life imprisonment for murder in Cause #CR-91-22-C (P1). I have been advised by my Attorney, Paul R. Scott, that I have a right to appeal this conviction and sentence to the Mississippi Supreme Court. I have discussed my case with my said attorney and do not desire to file an appeal in this case.

¶3. On May 24, 1993, nearly two years after his sentencing hearing and subsequent incarceration at Parchman, Osborn filed a Motion for Leave to File an Out-of-Time Appeal in the Panola County Circuit Court. He asserted that he had not been advised of his right to appeal and now desired to appeal his sentence and conviction. The circuit court requested a response from the State and on December 12, 1994, an evidentiary hearing was held.

¶4. Osborn's privately-retained trial attorney, Paul Scott, testified at the hearing that he discussed Osborn's right to appeal with him as well and shared with him his opinion, based on his experience as a criminal defense attorney, that there was very little likelihood of a successful appeal:

Q. Okay, sir. Now what did Mr. Osborn tell you about an appeal, his desire to appeal this murder conviction?

A. Of course, after the trial I filed post-trial motions for a new trial and JNOV. And I believe those motions were heard in this courtroom. And that motion was overruled by the Court and he was sentenced at that time. I talked with Mr. Osborn after the sentencing. I talked with him and his sister, Betty, right back in this little holding cell area over here. And we discussed it, his right to appeal, and whether or not he -- you know, as I say, the Mississippi Supreme Court could do whatever they wanted to do. But the issue in this trial, from the onset, was not whether or not there was a homicide, it was whether or not it was murder or manslaughter. And that was -- I mean, that was really what the trial was about. It was my opinion that the likelihood of success on an appeal was slim, to say the very least. And we discussed that. At that point in time he did not want to appeal it. I advised him that he had a right to appeal it, with him and his sister, you know, just to clarify that. Because normally, particularly in the years that I had been a Public Defender, I had appealed a number of cases, I mean numerous convictions that were appealed. But as we talked, and he did not want to appeal the conviction. And, of course, I put it in writing that he had been advised that he had a right to appeal and he didn't desire to do that. He signed it, his sister witnessed it, and so I didn't proceed with filing the appeal.

Scott testified that he didn't recall who brought up the idea of appealing, but he was sure that he did since "that's something to be considered in every case." Asked why Osborn didn't want to appeal, his attorney responded that, "He just didn't want to fight it any more, he didn't want to appeal." He further added that as an attorney, he had a responsibility not to bring an appeal that "he knows or

firmly believes" is without merit.

¶5. Osborn testified at the hearing that although he had the funds available to appeal his conviction, Scott had advised him that "it wouldn't do no good." He alternately didn't recall and denied that Scott had advised him of his *right* to appeal. Betty Osborn stated that Scott advised her brother not to appeal and he accepted his attorney's advice.

¶6. Although Osborn testified that he changed his mind about filing an appeal several days after his October 31, 1991 sentencing, he indicated that he got the idea to file an out-of-time appeal several months later at Parchman:

> I go to the law library and, you know, do a little reading, and talking with different guys that work there. And they told me, you know, that I had a right, you know, he was supposed to been filing me an appeal. Anybody in their right mind with a life sentence would want to appeal. And I was thinking after he had told me that it wouldn't do no good that he was, you know -- So, you know, I just took his word, after he said it wouldn't do no good.

Osborn had a writ writer send an undated letter to Scott, complaining that a life sentence was unwarranted for what he considered to be the "justifiable" killing of Anthony Montgomery. He requested that Scott file an out-of-time appeal. Scott responded with a November 5, 1992 letter to Betty Osborn, explaining that under the circumstances, there was nothing he could do to reduce her brother's sentence.

## II.

¶7. Osborn first asserts that the circuit court was required not only to advise him of his right to appeal his conviction and sentence and the details of the appeals process, but also to elicit responses from him regarding his desire to appeal his case, his understanding of the time frame in which he could make an appeal and his financial ability to pursue an appeal. Because the circuit judge merely advised him of his right to appeal, he asserts that he now is entitled to an out-of-time appeal. Osborn's argument is based on *Wright v. State,* 577 So. 2d 387 (Miss. 1991), which he construes as a "mandate" by this Court, "analogous to a statutory scheme." In *Wright*, we found that an evidentiary hearing should have been ordered to determine whether the defendant's attorney had advised him of his right to appeal his sentence and conviction because the affidavits which were submitted contained conflicting statements about material facts. We further made "note" of suggested procedures for attorneys and trial judges to follow so as to ensure that defendants were fully advised of their right to appeal.

> Finally, we note that disputes between lawyer and client over instructions to take or not to take an appeal are difficult to resolve without a record. Lawyers should assist the court in this regard by reducing decisions whether to appeal a criminal conviction to a writing signed by the defendant. We note with approval the steps taken by the defendant's attorney in *Fair v. State,* 571 So.2d 965 (Miss. 1990).

> We also urge trial courts to advise criminal defendants of their rights concerning appeal on the record at the time of sentencing and to solicit a decision in that regard. Should a decision be made on the record to appeal the defendant should be advised that decision will stand unless a

written statement to the contrary, signed by the defendant and the attorney, is filed with the court. Should the decision be made to waive appeal the defendant should, nevertheless, be informed of the time limits for appeal and told that his decision to waive shall stand unless he gives written notice to the court and his attorney prior to the expiration of the time. Should no decision be made the court should inform the defendant that his failure to express a desire to appeal shall be considered a waiver of his right to appeal and that such waiver will stand unless he gives written notice to the court and counsel prior to the expiration of the time in which to perfect the appeal.

*Wright,* 577 So. 2d at 390. While *Wright* "urges" trial judges to elicit from a defendant some decision regarding the desire to appeal at the time of sentencing, which we encourage them to do to the extent it is practicable, nothing in the language of the opinion "mandates" the judge to ascertain the intentions of the defendant (who may not have had a chance to confer with his attorney regarding the advisability of an appeal) or requires him to make inquiry into whether the defendant understands the time limit for making an appeal or has the financial ability to pursue an appeal. The sentencing hearing is usually the last opportunity the trial court has to meet with the defendant. As a practical matter, the decision to appeal is not made until afterward. The trial court only can ascertain whether the defendant is aware of his right to appeal and the time frame in which he can raise his appeal.

¶8. Osborn's attorney discussed the right to appeal with his client immediately following the sentencing hearing. His attorney properly obtained a signed and witnessed statement indicating that Osborn did not wish to appeal. While it is preferable for the circuit court also to make some inquiry into whether the defendant understands the rights of which he has been advised, where, as in the case *sub judice*, there has been a full-scale evidentiary hearing as to whether an out-of-time appeal should be allowed, the fact that the trial judge merely advised the defendant of his right to appeal does not, in and of itself, warrant the grant of an out-of-time appeal.

¶9. Knowledge that an appeal exists is not the same as knowledge that there is a *right* to appeal. *Summerville v. State,* 667 So. 2d 14, 15 (Miss. 1996); *Wright,* 577 So. 2d at 390. In those cases where there has been some question as to whether the defendant was advised of his right to appeal, we have held that he is entitled to an evidentiary hearing on the matter. *Summerville*, 667 So. 2d at 15 (where affidavits of attorney and client were contradictory, defendant's signed statement that he was not going to appeal his conviction was not equivalent to knowledge that he had right to appeal); *Wright,* 577 So. 2d at 390. Since Osborn was provided with a full-scale evidentiary hearing on his entitlement to an out-of-time appeal, that requirement was met in this case.

III.

¶10. Osborn next contends that his attorney's post-trial performance was deficient because of his failure to appeal the conviction based on an alleged discovery violation at trial; his failure to advise his client that there was a thirty-day limit on his time for appeal; and his failure to pursue an out-of-time appeal for him within the three-year limit of the post-conviction relief law. He further asserts that he was prejudiced by his attorney's failure to contact him within the thirty-day period to see if he had changed his mind about his desire to appeal.

¶11. To demonstrate that he is entitled to an out-of-time appeal, Osborn must show by a preponderance of the evidence that he asked his attorney to file an appeal within the time limit for

doing so and that through no fault of Osborn's, his attorney failed to file the appeal. Miss. Code Ann. § 99-39-23(7); *Dickey v. State,* 662 So. 2d 1106, 1109 (Miss. 1995); *Harris v. State,* 624 So. 2d 100, 101 (Miss. 1993). The record from the evidentiary hearing indicates that after his sentencing hearing, Osborn signed a statement indicating that his attorney had advised him of his right to appeal his conviction and sentence, and that after discussing his case with Scott, he did not wish to pursue an appeal. Although Osborn testified at the evidentiary hearing that he changed his mind several days later, there is no evidence that he tried to contact his attorney and advise him of his change of heart until nearly a year later. The record indicates only that sometime in 1992, after he had been at Parchman for several months and had learned about various forms of post-conviction relief from other inmates, he had a writ-writer send an undated letter to his attorney complaining about his life sentence and requesting, in a round-about way, that he file an out-of-time appeal. Apparently in response to that letter, his attorney wrote a letter to Osborn's sister stating that there was nothing further he could do to reduce his sentence. The record, therefore, simply does not support Osborn's motion for an out-of-time appeal.

¶12. In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984); *Wilcher v. State*, 479 So. 2d 710, 713 (Miss. 1985); *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984). This Court looks at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial. *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988); *Read v. State*, 430 So. 2d 832, 839 (Miss. 1983). "Judicial scrutiny of counsel's performance [is] highly deferential." *Strickland*, 466 U.S. at 689. There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Carney*, 525 So. 2d at 780; *Gilliard v. State*, 462 So. 2d 710, 714 (Miss. 1985). Only where it is reasonably probable that but for the attorney's errors, the outcome of the trial would have been different, will this Court find that counsel's performance was deficient. *Dickey,* 662 So. 2d at 1106; *Reed v. State,* 536 So. 2d 1336, 1339 (Miss. 1988).

¶13. Osborn's claim of ineffective assistance of counsel is based on his attorney's alleged failure to file an appeal, to advise him of the thirty-day time period in which an appeal must be filed, and to file a motion for an out-of-time appeal. There is no evidence in the record, however, that Osborn ever asked his attorney to file an appeal. To the contrary, the record indicates that he signed a statement showing that he had been advised of his right to appeal and did not desire to do so. As we explained in *Fair*, where the defendant signed an affidavit indicating that he had discussed his right to appeal with his attorney and did not desire to pursue an appeal, this Court stated, "[t]he sworn waiver functions in this context as substantial credible evidence that Fair did, in fact, receive contemporaneous advice regarding his right to appeal and that he did knowingly and intelligently waive same." *Fair*, 571 So. 2d at 967. Because of Osborn's failure to prove the existence of an agreement to perfect an appeal, his attorney's performance cannot be found deficient based on his failure to appeal the case. *Dickey,* 662 So. 2d at 1109. Further, none of our cases place a duty on an attorney whose client has provided a written waiver of his right to appeal to keep checking with him during the thirty-day period during which an appeal may be brought to make sure he has not changed his mind. From the evidence presented, therefore, it appears to us that Osborn's attorney acted within the "wide range of reasonable professional assistance" in his advice to Osborn and his sister.

IV.

¶14. Since in the case *sub judice*, there has been a full-scale evidentiary hearing on the issue of whether the defendant is entitled to an out-of-time appeal, the fact that the circuit court, at trial, merely advised him of his right to an appeal rather than making a detailed inquiry into his understanding of that right, we do not find that an out-of-time appeal is warranted. Further, since the record indicates that Osborn did not seek an appeal of his case, his attorney's failure to perfect an appeal certainly does not amount to ineffective assistance of counsel. We therefore affirm the circuit court's order denying Osborn's motion for an out-of-time appeal.

¶15. **LOWER COURT'S DENIAL OF POST-CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**