742 So.2d 1163 (1999)
Larry HARVESTON a/k/a Luke Harveston, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00197-COA.
Court of Appeals of Mississippi.
June 22, 1999.
*1164 B. Calvin Cosnahan, II, McComb, John D. Sutton, Monticello, Rebecca G. Taylor, Edward O'Neal Benson, Brookhaven, Attorneys for Appellant.
Office of the Attorney General by Billy L. Gore, Attorneys for Appellee.
BEFORE KING, P.J., BRIDGES, AND LEE, JJ.
*1165 LEE, J., for the Court:
¶ 1. Larry Harveston, also known as Luke Harveston, was originally charged with three counts of the sale of methamphetamine and marijuana. Count one for the sale of methamphetamine was severed from counts two and three. Harveston was tried on counts two and three for the sale of methamphetamine and marijuana and was convicted and sentenced as an habitual offender on both charges. From this conviction Harveston perfects his appeal to this Court and although there is no clear demarcation of the issues in his brief, Harveston appears to argue the following issues on appeal: (1)whether there was sufficient evidence presented by the State to support Harveston's conviction and whether the verdict was against the overwhelming weight of the evidence, (2) whether the trial court erred in denying Harveston a continuance and whether said denial resulted in ineffective assistance of counsel, and (3) whether Harveston was unable to effectively assist his counsel with his trial due to a conflict of interest and Harveston being under the influence of medication. Finding his arguments without merit, we affirm.

FACTS
¶ 2. Larry Harveston was indicted by the Grand Jury of the Fourteenth Judicial District County of Lincoln, October Term 1995. Harveston was charged with three counts which are as follows: counts one and two were for the unlawful sale of methamphetamine, and count three was for the unlawful sale of marijuana. On the day of the trial, count one was severed from counts two and three; therefore, in the case at bar Harveston was only tried for counts two and three. Testimony during the trial revealed that on March 14, 1995, Harveston contacted a female who was a confidential informant and inquired as to whether she would be interested in the purchase of methamphetamine and marijuana. The informant responded in the affirmative and a time was arranged for Harveston to come to her house so he could make the sale. At approximately 7:45 p.m. that same evening the confidential informant contacted Officer Craig Oster through his pager.
¶ 3. Officer Foster testified that once he received the page he returned the telephone call placed by the informant and was advised that she had spoken with Harveston earlier that day and that she could purchase crystal methamphetamine and possibly some marijuana. Upon completion of the conversation with the informant, he contacted Agent Aldridge to assist him with the case. Both agents proceeded to the residence of the informant.
¶ 4. Upon arrival, both agents spoke with the informant, and she restated that she could buy methamphetamine and possibly marijuana from Harveston. Additionally, the informant instructed him and Agent Aldridge that she would need approximately ninety-five dollars to purchase the methamphetamine and marijuana. The necessary money for the purchase was furnished by the officers to the informant. At this point, the informant stated that Harveston would arrive at her house in approximately thirty minutes. Officer Oster and Agent Aldridge began to make the necessary preparations to conduct the investigation.
¶ 5. Officer Oster testified that to prepare for the arrival of Harveston he and Agent Aldridge searched the immediate area where the surveillance, audio, and video equipment would be located, as well as searching the pockets of the informant to make sure no drugs were available that would taint the investigation. A purse which belonged to the informant was searched and a pocket within the purse was designated as the location for the purchase money and the drugs. The purse was placed on the coffee table and the informant was instructed that when Harveston sold the drugs to her she was to place the drugs in the designated pocket inside the purse. The officers then proceeded *1166 to the room containing the monitoring systems to supervise the video and audio recordings of the transaction.
¶ 6. Harveston arrived at the residence of the confidential informant and entered said residence with a female and two children. Officer Oster testified that he was able to witness the transaction on a monitor while it was taking place. Officer Oster positively identified Harveston as the individual who transferred the drugs to the informant and who received the money for said drugs. In addition to Officer Oster's identification, the informant also identified Harveston as the individual who sold her the drugs on the date in question.
¶ 7. After Harveston left the residence of the informant, Officer Oster proceeded to collect the methamphetamine and marijuana from the purse of the informant. Officer Oster sealed the drugs individually in a plastic bag and forwarded them to the Mississippi Crime Lab where they were positively identified as containing methamphetamine and marijuana.

I. WHETHER THERE WAS SUFFICIENT EVIDENCE PRESENTED BY THE STATE TO SUPPORT HARVESTON'S CONVICTION AND WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 8. In the first assignment of error Harveston makes no legal argument and cites no authority to support this issue. Unsupported by authority, this issue is not properly before the Court for review; however, this Court feels compelled to address this issue. Dozier v. State, 247 Miss. 850, 157 So.2d 798, 799 (1963). In his brief Harveston has blurred the distinction between sufficiency of the evidence and a jury verdict being against the overwhelming weight of the evidence. For the purposes of appeal this Court will address both issues as they pertain to the case at bar. This Court will first examine the contention that the trial judge erred when he failed to grant a directed verdict or judgment notwithstanding the verdict.
¶ 9. "Requests for a directed verdict and motions JNOV implicate sufficiency of the evidence." Franklin v. State, 676 So.2d 287, 288 (Miss.1996). Harveston argues that there was insufficient evidence presented by the State to support a conviction on counts two and three for the sale of crystal methamphetamine and marijuana.
¶ 10. When the trial court judges the legal sufficiency, as opposed to the weight of the evidence on a motion for a directed verdict, the trial court is required to consider evidence introduced in the light most favorable to the State and accept as true all of the evidence introduced at trial by the State, including all reasonable inferences that may be drawn therefrom. Yates v. State, 685 So.2d 715, 718 (Miss. 1996). Any evidence that is favorable to the defendant must be disregarded during the consideration of the trial court in determining whether to grant a motion. Id. at 718.
¶ 11. When the court is making a determination on whether to grant a judgment notwithstanding the verdict, the court is "not at liberty to direct that the defendant be discharged short of a conclusion... that given the evidence, taken in the light most favorable to the verdict, no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." Hicks v. State, 580 So.2d 1302, 1304-05 (Miss.1991) (quoting Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983)). Additionally, in Hicks v. State, 580 So.2d 1302, 1305 (Miss.1991), the Mississippi Supreme Court quoted from McFee v. State, 511 So.2d 130, 133-34 (Miss.1987), to repeat the standard which we as an appellate court are to apply in resolving the issue of whether the evidence is sufficient to sustain the jury's verdict:
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all *1167 of the evidencenot just that supporting the case for the prosecutionin the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. (citations omitted).
¶ 12. After reviewing the record in this case, this Court determines that there was sufficient evidence presented through the testimony of the State's witnesses to allow the jury to decide if Harveston was guilty as charged under Miss.Code Ann. § 41-29-139 (Rev.1993). At trial, the testimony of Officer Oster and the confidential informant identified Harveston as the individual possessing the crystal methamphetamine and marijuana. Their testimony also positively identified Harveston as the individual who transferred the drugs to the confidential informant, and while the defense tried to rebut and discredit this testimony, the testimony was sufficient to present a jury question.
¶ 13. In Rainer v. State, 438 So.2d 290, 292 (Miss.1983), Rainer brought into issue the failure of the trial court to grant motions for a directed verdict and judgment of acquittal notwithstanding the verdict. Rainer claimed that the State had failed to prove his guilt beyond a reasonable doubt. Rainer argued that the testimony of certain witnesses needed to have been viewed with great caution because of ulterior motives and the fact that their trial testimony was contradictory to earlier statements given to police officers. Id. The circumstances in this case are similar to Rainer. The defense tried to devalue the credibility of the confidential informant's testimony by showing ulterior motives and contradictions in the informant's trial testimony. Although evidence in a case may be slim, the Court must accept all reasonable inferences as true when it reviews the sufficiency of the evidence. Id. A trial judge can take the case from the jury only where there is no testimony that would warrant the jury, if the witness were believed, in finding a verdict. Price v. State, 207 Miss. 111, 41 So.2d 37, 40 (1949).
¶ 14. One argument asserted by Harveston to support his contention that the evidence was insufficient to form a jury question was the fact that the video and audio tapes were inconclusive. We do not have the benefit of the actual video or audio tapes and, therefore, we are left only to review the aforementioned contention asserted in the brief of Harveston as to quality. The Mississippi Supreme Court dealt with the admissibility of an audio tape recording in Middlebrook v. State, 555 So.2d 1009, 1012-13 (Miss.1990), and stated as follows:
The mere fact that portions of such a recording are inaudible does not render it per se inadmissible. The question is whether what can be heard has probative value within Rule 401. Considered as evidence that Middlebrook sold marijuana to Kitchens, relevance of the tape recording is marginal at best. Much background noise, other voices, and just plain static abound so that, even with the most careful and strained listening, we detect little probity. We accept without hesitation the utility of tape recordings in law enforcement and recognize the evidentiary value of such recordings in criminal prosecutions. We understand, as well, the practical reality that few sales of controlled substances are made in sound controlled recording studios. Still, as a predicate to admissibility, *1168 Rule 401 requires that the recording be of such quality that it advances the ball. The recording at issue, garbled and difficult as it is, meets the test in that it suggests someone is buying marijuana from someone else and, if nothing else, shows the corpus delicti. We reject the suggestion that a tape recording such as this could only confuse the jury and impermissibly prejudice the accused. Jurors are not without common sense nor the capacity for discrete or critical judgment. Our criminal justice system necessarily proceeds on the premise that jurors take their responsibilities quite seriously and are likely less gullible than lawyers like to think.
¶ 15. In Middlebrook, the court initially discussed the requirement of authentication or identification as a condition precedent to admissibility of evidence under Mississippi Rule of Evidence 901 before approaching the issue presented by Mississippi Rule of Evidence 401; however, this question is not posed in the case at bar because the prosecution and counsel for Harveston stipulated that the tapes were copies of the originals recorded at the time of the subject drug transaction. However, as aforementioned the tapes established the presence of Harveston during the conveyance of the methamphetamine and marijuana to the confidential informant and such evidence was further supported by the aforementioned identification testimony of Officer Oster and the confidential informant.
¶ 16. Considering all of the evidence in the record and giving the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence, and if all the aforementioned evidence is taken as true, reasonable men could have found that Harveston was guilty. Accordingly, this assignment of error is without merit.
¶ 17. Harveston further contends that the trial court erred when it did not grant him a new trial. Harveston claims that a new trial should have been granted because the verdict of the jury was against the overwhelming weight of the evidence. In Benson v. State, 551 So.2d 188, 193 (Miss.1989), the Mississippi Supreme Court provided the following explanation of when it would grant a new trial:
This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Factual disputes are properly resolved by the jury and do not mandate a new trial. Temple v. State, 498 So.2d 379, 382 (Miss. 1986).
A motion for a new trial is within the sound discretion of the trial court. Burge v. State, 472 So.2d 392, 397 (Miss.1985). We have often stated that issues regarding the weight and credibility of evidence lie with the jury. Eakes v. State, 665 So.2d 852, 872 (Miss.1995). We will reverse only where the evidence, as to at least one of the elements of the crime charged, is such that a reasonable and fair minded juror could not find the accused guilty. Id. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court accepts as true all evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Id.
¶ 18. In the case at bar a video and audio tape were admitted into evidence which showed Harveston and the informant exchanging drugs and money. The State played the video recording of the drug transaction while the prosecutor elicited the testimony of both Officer Oster and the confidential informant. Both of these individuals identified Harveston as the individual who conveyed the drugs and who received the money. Harveston argues that the tapes were inconclusive and, therefore, the verdict was against the overwhelming *1169 weight of the evidence; however, it must be kept in mind that the discrepancies were properly resolved by the jury as fact finder because questions regarding weight and worth of witness testimony or witness credibility are for the jury to settle. Eakes v. State, 665 So.2d 852, 872 (Miss.1995).
¶ 19. Accepting the evidence as true, as we are required to do, a review of the record reveals that the jury's verdict was not against the "overwhelming weight of the evidence" and to allow the jury's verdict to stand would not result in an "unconscionable injustice." We do not think the trial court abused its discretion in failing to grant a new trial. We, therefore, find no reversible error by the trial court.

II. WHETHER THE TRIAL COURT ERRED IN DENYING A CONTINUANCE AND WHETHER SAID DENIAL OF CONTINUANCE RESULTED IN INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 20. The second assignment of error argued by Harveston on appeal is that the trial court erred when it denied the request for continuance presented by him on the day of the trial, and that such denial deprived him effective assistance of counsel and a fair trial. Harveston argues, as he did the day of trial, that due to a conflict of interest it was necessary to discharge his attorney from representing him and a continuance was warranted. Harveston quotes in his brief:
The person that hired Mr. Brumley is going to be indicted on the same charge that I am. They have been trying to get me to plead guilty so that this person wouldn't be indicted and I feel like it's a conflict of interest that they want me to plead guilty to keep this other person from being indicted.
Harveston is procedurally barred from raising the aforementioned argument since it was not listed as grounds in his motion for a new trial. "The denial of a continuance in the trial court is not reviewable unless the party whose motion for continuance was denied makes a motion for a new trial on this ground, making the necessary proof to substantiate the motion." Colson v. Sims, 220 So.2d 345, 347 (Miss.1969); see also Jackson v. State, 423 So.2d 129, 132 (Miss.1982). "The general rule in this Court, as in all appellate courts, is that no error not assigned may be urged as grounds for reversal. Miss. Sup.Ct. Rule 6(b). A corollary rule is that, before an issue may be assigned and argued here, it must first have been presented to the trial court. Where the issue has not been timely presented below, it is deemed waived. The point is thus said to be procedurally barred when urged here." Read v. State, 430 So.2d 832, 838 (Miss.1983). Additionally, the only legal authority cited to support Harveston's contention is McCaine v. State, 591 So.2d 833 (Miss.1991), which enumerates that the defendant must affirmatively request a continuance or waive the issue. Harveston has failed to complete his argument. Other than McCaine, Harveston makes no legal argument and cites no authority to further support this issue. Therefore, not only is Harveston's argument procedurally barred for failure to raise the issue in his motion for a new trial, but is also unsupported by authority. Dozier v. State, 247 Miss. 850, 157 So.2d 798, 799 (1963). This issue is not properly before the Court for review. Even with these circumstances being present this Court will address the issue as if it had been properly preserved and presented on appeal.
¶ 21. "The general rule is that the granting or denial of a motion for a continuance is a decision within the discretion of the trial judge." Alford v. U.S., 709 F.2d 418, 422 (5th Cir.1983). A reversal is warranted only where that discretion has been abused. Id. However, there is no mechanical test for determining whether a continuance should be granted, and the circumstances of each case must be carefully examined, especially the reasons presented to the trial judge at the time the request is denied. Id.
*1170 ¶ 22. It must be noted that Harveston appears to have become well versed in tactics to delay a trial. Originally, Harveston was being represented by a public defender. On August 19, 1996, Harveston was scheduled for an omnibus hearing in his case. On that date Harveston notified his attorney that he no longer wished to have his services and had retained private counsel, Mr. Brumley. Mr. Brumley proceeded to handle Harveston's case and prior to trial Harveston had agreed to enter a plea of guilty; however, on the day of the plea bargain hearing Harveston refused the recommendation and desired to go to trial. The trial was scheduled to take place the following week, but was delayed due to a crowded docket and scheduled shortly thereafter. Harveston was aware of who had retained counsel on his behalf and at no time during these hearings did Harveston move to discharge his attorney from further representation. Harveston waited until the day the trial was scheduled to begin before he informed the court that he wished to discharge Mr. Brumley due to a conflict of interest based on the loyalty of his attorney and, therefore, he needed a continuance.
¶ 23. The Mississippi Supreme Court holds that "[t]he effective right of counsel encompasses the right to representation by an attorney who does not owe conflicting duties to other defendants." Smith v. State, 666 So.2d 810, 812 (Miss. 1995) (quoting Stringer v. State, 485 So.2d 274, 275 (Miss.1986)). "Moreover, undivided loyalty of defense counsel is essential to the due process guarantee of the Fifth Amendment." Littlejohn v. State, 593 So.2d 20, 23 (Miss.1992) (citing U.S. v. Alvarez, 580 F.2d 1251, 1256 (5th Cir. 1978)). In Stringer v. State, 485 So.2d 274, 275 (Miss.1986), took the definition of actual conflict from Irving v. Hargett, 518 F.Supp. 1127, 1143 (N.D.Miss.1981), which states:
If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.
Id. (citation omitted). Under the second prong, "prejudice is presumed only if the defendant demonstrates that counsel `actively represented conflicting interests' and that `an actual conflict of interest adversely affected his lawyer's performance.'" Smith v. State, 666 So.2d 810, 812-13 (Miss.1995) (quoting Cabello v. State, 524 So.2d 313, 316 (Miss.1988)). After reviewing the record this Court finds it devoid of evidence which supports the assertion that an actual conflict of interest existed between Harveston and Mr. Brumley.
¶ 24. As aforementioned, Harveston contends that his attorney's loyalties were divided between the individual who had hired him to represent Harveston and himself. Harveston perceived that this individual was a defendant or potential defendant in the case and, therefore, there was a conflict of interest. The record does not support this contention made by Harveston.
¶ 25. The legal assistant affiliated with the firm of Mr. Brumley testified that she was privy to one of the discussions between Harveston and Mr. Vick, an attorney with the firm, representing Harveston. She explained that she had only gathered that Mr. Vick had advised Harveston "that if he didn't take the plea that he was going to receive a longer jail sentence." Furthermore, Mr. Brumley rejected the aforementioned conflict of interest. Mr. Brumley represented to the court that due to his experience in trial work he recommended Harveston take the plea bargain. Mr. Brumley stated that he had not been retained to represent this individual and that she had not been indicted, arrested, or had a warrant issued for her arrest. Therefore, the trial judge was within his discretion when he determined no conflict of *1171 interest existed which warranted a continuance.
¶ 26. Harveston further argued that due to the denial of the continuance and appointment of Mr. Brumley he received ineffective assistance of counsel; however, in his brief Harveston fails to suggest how trial counsel's performance was deficient and how the deficient performance, if any, prejudiced him. Harveston fails to cite legal authority to support his contention of ineffective assistance of counsel.
As far as possible, the reasons assigned should be supported by the citation of authorities or they will not be considered unless it is clearly apparent that they are well taken. It is the duty of counsel to make more than an assertion; they should state reasons for their propositions and cite authorities in their support. It is seldom sufficient to state naked legal propositions, for propositions are by no means always self-evident, and when not self-evident the party who advances them and cites no authority to support them may justly be said to have failed to maintain them.
Dozier, 247 Miss. 850, 157 So.2d 798, 799 (1963) (citations omitted).
This Court feels compelled to briefly explain why this argument presented by Harveston fails.
¶ 27. The United States Supreme Court has enumerated the test that must be followed when an individual claims he has been denied ineffective assistance of counsel. In Strickland v. Washington, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), it was enumerated that the court must look at whether or not counsel's overall performance was (1) deficient and (2) whether or not the deficient performance, if any prejudiced the defense. The burden is on the defendant to demonstrate that both elements exist. Edwards v. State, 615 So.2d 590, 596 (Miss.1993). Whether deficiency and prejudice exists must be determined from the "totality of the circumstances." Osborn v. State, 695 So.2d 570, 575 (Miss.1997). Harveston has failed to assert a factual basis for either a deficiency or prejudice that may have resulted in the case at bar. Therefore, we, find that this argument is without merit.

III.

WHETHER HARVESTON WAS UNABLE TO EFFECTIVELY ASSIST HIS ATTORNEY IN THE TRIAL DUE TO CONFLICT OF INTEREST AND HIM BEING UNDER THE INFLUENCE OF MEDICATION.
¶ 28. As a third assignment of error Harveston argues that due to the alleged conflict of interest and medications he had taken at the time of his trial he was unable to effectively assist his attorney; however, Harveston's argument stops with these assertions. Once again Harveston fails to cite legal authority to support his argument.
¶ 29. After a review of the record this Court finds that Harveston was quite aware of his surroundings. On the day of the trial, Harveston presented a motion for continuance to the trial judge and fully explained the basis for his desire to discharge his attorney and the need for a continuance. After the trial court denied the continuance, it presented Harveston with the following choices: (1) he could retain his present attorney, or (2) he could represent himself and the court would appoint his present attorney to assist him with the trial. Harveston rejected both ideas and continued to present the court with circular logic. The trial judge ultimately determined that there was no conflict of interest and Harveston would represent himself while his present attorney was appointed to assist him with the trial. At this point, Harveston instructed the jury that he did not wish to be present during his trial.
¶ 30. The trail court proceeded to question Harveston and gave him every opportunity to be present at his trial. Harveston continued to refuse to be present. *1172 Harveston stated that he was not an attorney, that he perceived there was a conflict of interest, he needed medication, and that due to his temper he did not want to be present in the courtroom during his trial.
¶ 31. Miss.Code Ann. § 99-17-9 (Rev. 1994) states as follows:
In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto. If the defendant, in cases less than felony, be on recognizance or bail or have been arrested and escaped, or have been notified by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or be in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment final and sentence be awarded as though such defendant were personally present in court.
In Sandoval v. State, 631 So.2d 159, 163 (Miss.1994), the supreme court cited the case of Thomas v. State, 117 Miss. 532, 542, 78 So. 147 (1918) for its interpretation of the waiver statute and presented the following conclusions as drawn from the Thomas court:
We think the meaning, purpose, and intent of the statute are plainly expressed by its language, and that it is valid and constitutional. It simply means that in all criminal cases the accused may waive his presence at any stage of the trial, if in custody, and the trial will proceed in his absence, provided he consents thereto; and provided, further, that such proceeding in the absence of the accused meets with the discretionary approval of the court.
Harveston was in custody and present at the beginning of the trial. The record clearly reflects that he voluntarily waived his right to be present during his trial. Additionally, Harveston fails to argue actual prejudice and after a review of the record none is apparent to this Court.
¶ 32. As aforementioned, Harveston contends that during the trial he was medicated and had suffered an overdose in an attempt to commit suicide. In Bourne v. State, 103 Miss. 628, 60 So. 724 (1913), the appellant in the case was convicted in the Circuit Court of Marion County upon an indictment charging him with the unlawful sale of intoxicating liquors. When his case was called in the court, his counsel made application for a continuance and filed in support of this motion an affidavit of the defendant stating that the defendant was sick and unable to attend court. Id. Additionally, the attorney contended that it was necessary for him to be present in order that he might properly make his defense to the charge preferred against him. Id. Evidence revealed that the defendant, just prior to the beginning of the term of court, had proceeded to consume large quantities of whisky and was "sick at the stomach" and very nervous. Id. The defendant had a physician testify on his behalf that he thought he was in no condition to look after a case in court. Id. at 725. The trial judge did not excuse the defendant from appearing to answer his bond, because of his drunkenness, or because of the consequences which flowed from his self-caused disability. Id. The motion for a continuance was overruled, and the case was tried in the absence of the accused, which trial resulted in a verdict of guilty. Id. Bourne stands for the proposition that an accused is not entitled to a continuance on account of sickness, where it was caused by voluntary means.
¶ 33. In the case at bar, Harveston voluntarily consumed his medications during the period of his trial and any overdose was self-inflicted. Additionally, the argument presented by Harveston is much weaker than that in Bourne. Unlike Bourne, and most importantly, Harveston had previously voluntarily waived his right to be present at the trial. Additionally, Harveston did not have a physician testify to any limitations caused by his self-inflicted illness. Furthermore, neither at the beginning of the trial, during the trial, or *1173 on appeal were specific facts argued to show prejudice or that his presence was necessary to properly prepare a defense. Therefore, we find the trial court committed no error.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION AS AN HABITUAL OFFENDER OF THE UNLAWFUL SALE OF METHAMPHETAMINE AND ENHANCED SENTENCE OF SIXTY YEARS AND CONVICTION AS AN HABITUAL OFFENDER OF THE UNLAWFUL SALE OF MARIJUANA AND ENHANCED SENTENCE OF SIX YEARS WITH SAID SENTENCES TO RUN CONSECUTIVELY AND IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO LINCOLN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, PAYNE, AND THOMAS, JJ., CONCUR.
IRVING, J., CONCURS IN RESULT ONLY.