## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 97-CT-01429-SCT

*ELBERT LEE WILLIAMS a/k/a AL WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/1997 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HENRY PALMER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | BILBO MITCHELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 4/6/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/27/2000 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Elbert Lee Williams was indicted on two counts of the sale of marijuana. At trial Williams did not deny that he participated in the sales, but rather argued that he was entrapped into participating in them. He was convicted and sentenced to a total of ten years in the custody of Mississippi Department of Corrections. The Court of Appeals in a 5-5 decision affirmed his conviction. He subsequently filed a petition for writ of certiorari, which we granted. Because the trial court erred in allowing into evidence a certified copy of a ten-year-old indictment for possession of marijuana with intent to distribute, as well as evidence that he subsequently pled guilty to possession of marijuana, and because Williams was improperly denied an entrapment instruction, we reverse and remand for a new trial.

### FACTS

¶2. In December of 1994, Agent John Butler of the Mississippi Alcohol and Beverage Control division of the Mississippi Tax Commission received a tip from confidential informant, Robert Pollard, that marijuana was being sold at Elbert Lee Williams's (Williams) night club located in the Whynot community in Lauderdale County, Mississippi.

¶3. Karl Merchant, a detective with the Meridian Police Department on special assignment to the Meridian/Lauderdale County Drug Task Force, requested Pollard to become friends with Williams, which Pollard did. Subsequently, on June 20, 1996, Pollard purchased $150 of marijuana from Williams. The next

day, Pollard and Walter Martin, an undercover agent with the Southeast Mississippi Drug Task Force, went to Williams's establishment, where Williams sold Martin three ounces of marijuana for $450. During this buy, Martin also arranged to buy a pound of marijuana from Williams at a later date.

¶4. Four days later, on June 24, 1996, Pollard delivered to Martin two ounces of marijuana given to him by Williams. On June 26, 1996, Martin met with Williams and paid him $300 for the two ounces which had been delivered by Pollard two days earlier. At that same meeting, Martin arranged to buy a pound from Williams.

¶5. The next morning, Williams met with Martin and Pollard. Williams informed Martin and Pollard that he did not have the pound at that time, but told them to come back later and he would have it. Martin returned without Pollard, and upon arrival, instead of the one pound of marijuana he had promised, Williams had approximately 7.7 pounds of marijuana. Williams accepted $1,600 from Martin and extended Martin $9,750 credit. Subsequently, on July 19, 1996, Martin ordered another five pounds of marijuana and made arrangements to pay the outstanding balance of $9,750.

¶6. At this point, law enforcement authorities decided to pay Williams the $9,750 balance, attempt to buy the additional five pounds of marijuana, and then arrest Williams. When Williams showed up, he did not have the five pounds of marijuana with him. Williams was paid the $9,750, and made the arrest.

¶7. At trial, Williams admitted to his involvement in both sales but alleged that Pollard entrapped him into participating in the sales. He argued that Pollard's continual inquiries led him to arrange the sale even though he had never participated in illegal narcotic sales. The State, over Williams's objection, introduced evidence of a ten-year-old prior misdemeanor conviction for possession of marijuana which resulted from a guilty plea, as well as the indictment in that cause which charged Williams with possession of marijuana with intent to distribute.

¶8. The jury convicted Williams and he appealed. His case was assigned to the Court of Appeals, which in a 5-5 decision, affirmed the conviction. The Court of Appeals found that the trial court erred in allowing the prior conviction for possession into evidence, but five of the ten Court of Appeals Judges found the error to be harmless. Williams filed a motion for rehearing which was denied by the Court of Appeals, and he subsequently timely filed the petition for writ of certiorari which is currently before the Court.

## ANALYSIS

¶9. Williams first argues that the evidence regarding the previous conviction and indictment should not have been admitted because the State did not disclose in discovery the fact that it intended to use them. In support of his argument he cites *Norris v. State*, 735 So.2d 363 (Miss. 1999)[1]. In *Norris*, the appellants were convicted of simple assault on a law enforcement officer. At 6:00 p.m. on the night before the trial, the State produced sixty to ninety pages of statements from approximately twenty five witnesses. There this Court stated:

This Court has set forth the following procedures for trial courts to follow when faced with a discovery violation:

1) Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.

2) If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.

3) If the defendant does request a continuance, the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.

*Cole v. State*, 525 So.2d 365, 367-68 (Miss.1987) (*citing Box v. State*, 437 So.2d 19, 23-24 (Miss.1983)(Robertson, J., specially concurring); *See also Ramos v. State*, 710 So.2d 380, 385 (Miss.1998); *West v. State*, 553 So.2d 8, 18 (Miss.1989).

*Norris*, 735 So.2d at 364.

¶10. The Court in *Norris* went on to reverse and remand the case, and in so doing found:

In spite of the great care taken by the trial judge to diminish the prejudicial effects brought on by the State's belated disclosure, the Norrises were ambushed and surprised by the violation of a discovery rule, which is simple and clear on its face. The night before a jury trial is a very busy time for even a well-prepared lawyer under the best of circumstances. Procedurally, the Norrises did all that they were required to do when confronted with a possible discovery violation. *See Houston v. State*, 531 So.2d 598, 611-12 (Miss.1988). Under *Box* and its progeny, the defendant is not required to show prejudice, nor is he required to demonstrate what, if any, efforts have been made in order to rebut the late discovery. Neither our cases nor our rules require defendants to demonstrate prejudice where there has been a gross discovery violation by the State, as presented here.

*Norris* at 365.

¶11. In the present case, the State introduced evidence of Williams's prior misdemeanor conviction for possession of marijuana which had resulted from a guilty plea entered approximately ten years prior to the incident in question. The State also entered into evidence a certified copy of the indictment in that cause which showed that Williams had originally been indicted for possession of marijuana with intent to distribute. Williams initially objected to evidence of the prior conviction being admitted because it was stale and irrelevant. He did not allege a discovery violation at that point. When the State then sought to introduce a certified copy of the indictment in the cause of his prior conviction, he then objected on the basis that the State had not disclosed in discovery that it intended to introduce such evidence.

¶12. However, Williams never sought a continuance, much less a mistrial, and therefore this issue has been waived. *Norris* at 364. In addition, counsel for Williams stated at one point that he was not surprised about the conviction, just that the State was seeking to use it against him at trial. We find there is no merit to this issue.

¶13. Williams next argues that the opinion of the Court of Appeals is in conflict with **Tudor v. State**, 299 So. 2d 682, 685-86 (Miss. 1974), and **Rainer v. State**, 438 So. 2d 290, 293 (Miss. 1983). **Tudor** found allowing evidence of other crimes before the jury to be inflammatory and prejudicial and reversed and remanded. However, it should be noted that the issue of entrapment was not raised in **Tudor**.

¶14. In *Rainer*, the Court reversed and remanded the appellant's conviction because the trial court failed to instruct the jury that the indictment was not evidence of facts alleged in the indictment or to be considered as evidence of guilt.

¶15. On this issue, the five Court of Appeals Judges who voted to affirm found:

Williams complains that the trial court erred in admitting evidence of a ten year old guilty plea to misdemeanor possession of less than an ounce of marijuana. He urges that the admission of this prior conviction was so prejudicial to his receiving a fair trial that we must reverse his convictions. The State offered the evidence for the purpose of demonstrating Williams's predisposition to traffic in illegal drug. Evidence tending to establish predisposition is admissible in a case where the defendant defends by claiming he was entrapped. *Sanders v. State*, 678 So. 2d 663, 668 (Miss. 1996).

We conclude that the trial court erred in admitting evidence of this earlier conviction. However, we also conclude its admission was harmless in light of the overwhelming evidence of Williams's predisposition to traffic in narcotics as revealed by Williams own testimony. Evidence erroneously admitted in a defendant's trial will not warrant reversal on appeal unless it can be said that the defendant was unduly prejudiced by its admission. We are of the firm conviction that Williams was not so prejudiced. In arriving at this conclusion, we are not unmindful of the fact that in addition to the admission of Williams's ten year old guilty plea to misdemeanor possession of marijuana, the trial court allowed into evidence the indictment which charged Williams with possession of marijuana with the intent to sale, though he pled guilty to misdemeanor possession.

Williams's case for entrapment boiled down to this: Robert Pollard, a friend of his for approximately a month, asked him to sell some marijuana. He was asked four or five times by Pollard, and, at first, he declined. Pollard did not beg him. Nothing in the way of inducement was offered him. He finally agreed to do the transaction, selling first to Pollard, then to Agent Martin, a transfer to Pollard for Martin, and another sale to Martin with credit being extended to Martin for a portion of the purchase price.

The State's proof was that (1) in 1994, Agent Butler with the Alcohol Beverage Control division had received information from Robert Pollard that marijuana was being sold at Williams's club in the Whynot community, (2) immediately before the sales, which are the subject of these charges, took place, Robert Pollard purchased $150 worth of marijuana from Williams, (3) Williams was a very close friend of Audrey Irby, a person known to traffic in drugs, having been arrested in 1992 for growing marijuana on his farm in Clarke County, (4) Williams was asked, not begged, by Pollard to sell the marijuana to Agent Martin, (5) nothing was offered to Williams to get him to sell the marijuana other than the purchase price, (6) Williams willingly sold the marijuana that he got from Aubrey Irby.

In *Ervin v. State*, 431 So. 2d 130 (Miss. 1983) the Mississippi Supreme Court, in affirming the conviction of the appellant Billy R. Ervin who had asserted entrapment as a defense, opined:

Ervin's position is that the actions of Burnette, calling several times, claiming he was in trouble, which he was, and begging for assistance while acting in concert with narcotics officers constituted government action meriting a finding of entrapment as a matter of law. The facts in *Tribbett*, authored by Justice Roy Noble Lee, pointed out that one is not excused from selling contraband simply because an informer requested him to do so.

*Ervin*, 431 So. 2d at 133. The *Ervin* court went on to note, "Ervin knew where to get marijuana, had the means to obtain it, and did so to his detriment. He was asked to sell the substance and he was caught. No one coerced or otherwise forced him to drive to the state line on the day in question and deliver the substance to Burnette. The record shows that he did so because Burnette asked him and because he might clear $400 on the deal--his actions were those of an unwary criminal." *Id.* at 133-134. The same can be said of Williams in this case.

*Williams v. State*, No. 97-KA-01429-COA (Miss. Ct. App. May 4, 1999).

¶16. Chief Judge McMillin, who dissented, opined:

I respectfully dissent. In my view, the evidence of a ten year old marijuana possession conviction was not properly admitted to show predisposition to traffic in narcotics. Evidence of simple possession simply is not probative on the question of a propensity to actively traffic. This error might have been dismissed as harmless but for the fact that the trial court permitted introduction of the earlier indictment itself as a part of the evidence of the prior conviction. The indictment had charged Williams with the greater crime of possession with intent to distribute. An indictment is a mere charging instrument and provides not the slightest evidence of actual guilt of the charges contained in the indictment. *See Rainer v. State*, 438 So. 2d 290, 293 (Miss. 1983).

By introduction of this indictment, the State was improperly permitted to suggest to the jury that Williams had previously been involved in criminal drug trafficking when, in fact, there was absolutely no competent evidence available that this was the case.

A defendant claiming entrapment is entitled to try to convince the jury that he had no predisposition to engage in such criminal activity. Improperly admitted evidence strongly suggesting a long history of similar behavior must certainly be seen as critically affecting Williams's ability to pursue a legitimate defense to the charges against him. I would find the evidence so prejudicial to Williams's defense as to have the effect of denying him a fundamentally fair trial and would reverse and remand for a new trial where the evidence of this prior conviction was excluded. M.R.E. 103; *Tudor v. State*, 299 So. 2d 682, 685-86 (Miss. 1974).

*Williams v. State*, No. 97-KA-01429-COA (Miss. Ct. App. May 4, 1999) (McMillin, C.J., dissenting).

¶17. The Court of Appeals agreed that the admission of the conviction and indictment was erroneous; where the Court of Appeals parted ways was on whether the admission of such evidence constituted harmless error.

¶18. This Court has held that:

The basic test for harmless error in the federal constitutional realm goes back to *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The *Chapman* test is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (quoted in *Yates v. Evatt*, 500 U.S. 391, 392, 111 S.Ct. 1884, 1886, 114 L.Ed.2d 432, 448 (1991)). The *Yates* Court further clarified that the inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether that error was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates*, 500

U.S. at 403, 111 S.Ct. at 1887, 114 L.Ed.2d at 449.... *Wilcher v. State*, 635 So.2d 789, 798 (Miss.1993).

*Thomas v. State*, 711 So.2d 867, 872-73 (Miss. 1998). We find that the error in this case was not harmless. Williams admitted to making the sales, but argued that he was entrapped by the State. The criminal propensity vel non of Williams to sell drugs was the crux of the matter before the jury. To allow evidence of the conviction to be placed before the jury, especially the certified copy of the indictment without any limiting instruction, could not have been harmless error. While it is true that we have held evidence of uncharged offenses of drug trafficking is relevant where entrapment has been offered as a defense, *see Sanders v. State*, 678 So. 2d 663, 668 (Miss. 1996); *Sayre v. State*, 533 So. 2d 464, 465 (Miss. 1988), the criminal activity introduced here was for possession of marijuana, not for the sale of illegal drugs, and therefore should not have been admitted. We therefore reverse and remand for a new trial.

¶19. Williams next argues that the Court of Appeals erred in affirming the trial court's refusal to give an entrapment instruction on one of the two counts alleged in the indictment. In addition, Williams argues that because the informant in this case, Robert Pollard, did not testify, he was entitled to a directed verdict. In support of his position Williams cites *Gamble v. State*, 543 So. 2d 184 (Miss. 1989).

¶20. On these issues, the five Court of Appeals Judges who voted to affirm found:

> Williams, relying upon *Gamble v. State*, 543 So. 2d 184 (Miss. 1989), argues that he was entitled to a directed verdict. Williams's reliance on *Gamble* is misplaced. In *Gamble*, unlike here, the defendant testified that the confidential informer supplied the marijuana to the defendant for sale to the undercover agent. The State did not produce the confidential informant to contradict the defendant's testimony. Here, there is no testimony that the marijuana sold by Williams was supplied by the State. This assignment of error is without merit.

> . . . . . . . . . . . . . . . .

> Williams contend [sic] that he should have received an entrapment instruction on the June 27, 1996 transaction because it was inexorable [sic] intertwined with the earlier transactions. Only after a prima facie case of entrapment has been made is a defendant entitled to an entrapment instruction. Entrapment is the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense. The defense of entrapment is affirmative and must be proved by the defendant. If the defendant already possessed the criminal intent, and the request or inducement merely gave the defendant the opportunity to commit what he or she was already predisposed to do, entrapment is not a defense. *Hopson v. State*, 625 So. 2d 395, 399 (Miss. 1993). First, it is clear from Williams's own testimony, as set forth in Part I of this opinion, that he was probably not entitled to an entrapment instruction as to the first transaction. However, having been granted one by the trial judge, it was then up to the jury to assess the weight to be given. But as to the second transaction, which occurred six days after the first, the record shows Williams to be a real dealer, offering to sell more marijuana than was requested and even selling it on credit. It is difficult to see how an innocent person, never having entertained the notion to sell narcotics could have become so embolden in six days. We affirm the trial court's denial of the entrapment instruction as to the second transaction.

*Williams v. State*, No. 97-KA-01429-COA (Miss. Ct. App. May 4, 1999).

¶21. In **Gamble v. State**, 543 So. 2d 184 (Miss. 1989), we stated:

> In *Kemp v. State*, 518 So.2d 656 (Miss.1988), the Court held that such a reverse undercover operation embraced all elements and requirements for entrapment and that the defense was valid against the charge of conspiracy to possess marijuana. *See also Barnes v. State*, 493 So.2d 313 (Miss.1986), and *King v. State*, 530 So.2d 1356 (Miss.1988). In *King v. State*, 530 So.2d 1356, 1358 (Miss.1988), this Court said:

> Entrapment is an affirmative defense. Once the defendant makes out a prima facie case that he was entrapped, two consequences follow. First, the burden of production and proof shifts to the prosecution. *Irving v. State*, 431 So.2d 130, 133-34 (Miss.1983); *Tribbett v. State*, 394 So.2d 878, 881 (Miss.1981); *Alston v. State*, 258 So.2d 436, 438 (Miss.1972). Second, the accused becomes entitled to have the issue of entrapment submitted to the jury on proper instructions.

> The lower court in the case sub judice, granted an instruction on entrapment, but the jury rejected the law of entrapment as stated in the instruction. Had the State rebutted the testimony of appellant by calling McKee or by some other credible evidence, the lower court properly would have declined to sustain the motion for directed verdict. However, where the evidence stands uncontradicted, undisputed, and unimpeached, even though the jury may not have believed the appellant, that testimony stands and makes out the defense. In cases such as this, prosecutors must have rebuttal evidence at hand to refute such testimony.

**Gamble** at 185.

¶22. However, it appears that the aforementioned rule only applies in "buy and supply" cases, for we have also said:

> Consistent with accepted limitations on our scope of appellate review, we have recognized in supply-and-buy cases a discrete evidentiary circumstance where the defendant's testimony may be such that the trial court has no authority to submit the case to the jury. *Epps*, *Gamble*, *Tanner* and *Pulliam* were all cases where there was no substantial evidence of predisposition. In each case, the defendant testified that the state's paid confidential informant had supplied the marijuana an undercover state agent later importuned the defendant to sell to him. In each of these cases we made clear that, if the prosecution had called the confidential informant or other credible witness testifying on first-hand knowledge to rebut the defendant's claim, a jury issue would have been made and affirmance would have followed. However, where the evidence stands uncontradicted, undisputed and unimpeached, even though the jury may not have believed the appellant, that testimony stands and makes out the defense. In cases such as this, prosecutors must have rebuttal evidence at hand to refute such testimony. *Gamble v. State*, 543 So.2d at 185; *see also, Epps v. State*, 417 So.2d at 545. We understand this teaching in the context of our long-settled law that a jury has no right to disregard arbitrarily evidence that is uncontradicted and not unreasonable or improbable on its face. *Pulliam v. State, supra.*

**Bosarge v. State**, 594 So.2d 1143, 1146 (Miss. 1991).

¶23. The present case was not a "supply and buy" case, so Williams was not entitled to a directed verdict. However, Williams made out a prima facie case of entrapment, and therefore, pursuant to **Gamble**, *supra*,

he was entitled to an entrapment instruction on the second transaction. Williams testified that he had never trafficked or dealt in marijuana before and that it was only at the insistence of Robert Pollard that he sold the marijuana. Indeed Agent Martin testified that in nearly fifty undercover drug operations, he had never had drugs sold to him on credit before. We therefore reverse and remand on this issue as well.

¶24. Finally, Williams argues that it was reversible error when the trial court commented that Pollard was available and he could call him as a witness if he so desired. Williams cites no authority in support of his position. On this issue, the five affirming Court of Appeals Judges found:

> Williams contends that the following colloquy between his counsel and the court amounted to an improper shifting of the burden or proof to him and also ran afoul of the presumption of innocence with which he was clothed:
>
> By the Court: This Agent Martin, I assume, will be here to testify?
>
> By Mr. Malta: Yes, sir.
>
> ****
>
> By Mr. Palmer: Judge, since you asked him that about Agent Martin, will you ask him that about Pollard, too?
>
> By the Court: Mr Palmer, you know Mr. Pollard is here.
>
> By Mr. Palmer: Yes, sir, but I don't know whether he will call him or not.
>
> By the Court: You can. Somebody can. He is here and available to be called by anybody. I don't know who is going to testify, but Mr. Pollard is available to testify.
>
> This assignment of error is without doubt lacking in all merit.

*Williams v. State*, No. 97-KA-01429-COA (Miss. Ct. App. May 4, 1999). In light of the fact that the comment by the trial judge does not appear to be prejudicial to Williams, and because he cites no authority in support of his position, we find this issue is without merit.

## CONCLUSION

¶25. The trial court erred in allowing evidence of Williams's prior conviction for possession of marijuana, as well as allowing the ten-year-old indictment of Williams to be entered into evidence. The error was not harmless, and therefore we reverse and remand on that issue. The trial court also erred in denying Williams's entrapment instruction regarding the second count of the indictment, and therefore we also reverse and remand on this issue. The judgments of the Court of Appeals and the Lauderdale County Circuit Court are reversed, and this case remanded to the circuit court for a new trial consistent with this opinion.

¶26. **REVERSED AND REMANDED.**

> **PRATHER, C.J., BANKS, P.J., McRAE, MILLS AND WALLER,JJ., CONCUR. COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J. DIAZ,**

**J., NOT PARTICIPATING.**

**COBB, JUSTICE, DISSENTING**:

¶27. I respectfully dissent. Williams's own testimony clearly established that he was a significant dealer in marijuana. Within the one-week period of June 20 - 27, 1996, he freely and voluntarily participated in at least four transactions in which he sold marijuana. His final sale on the day of his arrest was of 7.7 pounds of marijuana. Predictably, he raised the issue of entrapment; what else could he do? However, this was definitely not an innocent man led astray by narcotics agents.

¶28. The jury was instructed on entrapment with regard to Williams's first sale to undercover agents, and rightfully so. At the time of any first sale, there could be a legitimate question as to whether the seller was predisposed to make the sale or was unlawfully induced to do so. However, by the time of Williams's last sale of 7.7 pounds of marijuana, there could be no doubt that he was an experienced, seasoned dealer. Thus, the trial court did not err in denying an entrapment instruction on that sale, which was the basis for Count II of the indictment.

¶29. I agree with the majority that it was error to admit the ten-year-old indictment, but in light of the overwhelming evidence of Williams's guilt, this error does not require reversal. I would affirm Williams's conviction and sentence as ordered by the Lauderdale County Circuit Court.

**SMITH, J., JOINS THIS OPINION.**

1. Neither of the Court of Appeals opinions addressed the alleged discovery violation.