# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-01935-SCT

*MARCUS LEON SMITH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/30/2000 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS MICHAEL REED |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | E. LINDSAY CARTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/13/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/3/2002 |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. On April 27, 1999, Marcus Leon Smith was indicted in the Forrest County Circuit Court for the murder of Timothy Holmes. At the conclusion of a jury trial, Smith was convicted and sentenced as a habitual offender to life imprisonment. The circuit court denied Smith's post-trial motion for JNOV or alternatively a new trial, and Smith now appeals, raising the following issues:

> **I. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT.**

> **II. THE VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE PRODUCED AT TRIAL.**

> **III. THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT IN FAVOR OF SMITH AT THE CLOSE OF THE STATE'S CASE.**

> **IV. THE TRIAL COURT ERRED IN OVERRULING SMITH'S MOTION TO STRIKE MEMBERS OF THE JURY POOL WHO HAD PREVIOUSLY SERVED IN THE TRIAL OF ALVIN BRIDGES, SR.**

**V. THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL DUE TO THE EVENTS SURROUNDING THE TRIAL OF ALVIN BRIDGES, SR.**

**VI. THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-2.**

**VII. THE TRIAL COURT ERRED IN DENYING INSTRUCTION D-6.**

**VIII. THE TRIAL COURT ERRED IN INSTRUCTING THE JURORS TO RETURN TO THE JURY ROOM AND CONTINUE DELIBERATING UNTIL THEY REACHED A VERDICT.**

**IX. THE CUMULATIVE EFFECT OF ALL OF THESE ERRORS AT TRIAL CONSTITUTES A VIOLATION OF DUE PROCESS.**

¶2. Concluding that all of Smith's issues are without merit, we affirm.

## FACTS

¶3. On December 21, 1997, Timothy Holmes was shot and killed as he was leaving a party in Hattiesburg, Mississippi. According to Lewis Santee, the only eyewitness to the crime, Holmes argued with Marcus Leon Smith over a girl. Smith left and retrieved a gun. As Holmes was leaving, he and Smith had a second altercation which ended when Holmes attempted to walk away and Smith shot him in the back of the head. Smith then left the scene.

¶4. A second witness, Tewania Santee, did not actually see the shooting, but she did testify that she observed the altercation between Smith and Holmes and that she saw Smith retrieve the gun from his car and approach the area where the shooting occurred. However, when the police prepared a photographic line-up for Tewania and Lewis to view (based upon information the police received indicating that Marcus Smith was the shooter), a clerical error led to the inclusion of a picture of a different Marcus Smith in place of the appellant. Consequently, neither Tewania nor Lewis was initially able to identify appellant Smith as the shooter. The error was quickly discovered and corrected, and Tewania identified appellant Smith as the person she saw with the gun. Lewis, however, was unable to identify appellant Smith until the fourth time he viewed the photographic lineup.

¶5. In addition to Tewania and Lewis Santee, the State also called Valencia Hawthorne, a former girlfriend of Smith's who claimed that he admitted shooting and killing a young man in Hattiesburg, and Wilmer Reese, Jr., who claimed that, as he was leaving the party, he saw Smith waving a gun at some person Reese did not know. The only physical evidence found at the scene was a single spent shell casing and a balloon upon which was written "Marcus + PSA 555-7173." The only witness called by Smith in his defense was Gertie Runnels, whose maiden name was Marcus and whose phone number was 555-7173. Runnels testified that no one from the police called her to find out anything she might know about the balloon or the shooting, and the State did not cross-examine her.

¶6. Smith's jury trial was complicated by the events surrounding the unrelated trial of Alvin Bridges on drug-related charges which took place earlier in the same week as Smith's trial. As the Bridges jury was deliberating, Bridges escaped, leaving the jury to convict Bridges in his absence. Some of the jurors from the Bridges case were then placed on Smith's jury. Smith's attorneys initially tried unsuccessfully to have those jurors struck for cause and eventually struck all but two of them with peremptory challenges.

¶7. While the Smith trial was ongoing, Bridges took hostages at a local bank, claiming that he did not receive a fair trial and demanding that the media tell his side of the story. These events received considerable media coverage in the Hattiesburg area. Furthermore, as jurors in the Smith case returned on August 24, 2000, they had to pass protesters picketing the Courthouse in support of Bridges who claimed that injustice had been done in his case.

¶8. In response to these developments, the trial court asked the members of the Smith jury individually and collectively if they had been exposed to any media coverage which might inhibit their ability to be fair to Smith. Furthermore, the trial court specifically asked Smith if he wanted a mistrial, and Smith declined. Smith also agreed that by declining to pursue a mistrial, he would be waiving his previous objection to the trial court's refusal to quash the jury pool because some of the jurors had sat on the Bridges jury.

¶9. After about two hours of deliberation, the trial court called the jury back into the courtroom to determine how close it was to a verdict. The jury at that point had not taken a vote, but after briefly continuing deliberations, the jury arrived at an 11-1 vote. The court then read the instruction approved for deadlocked juries by this Court's opinion in *Sharplin v. State*, 330 So.2d 591 (Miss. 1976) before sending the jury back to continue deliberations. Approximately 40 minutes later, a unanimous jury found Smith guilty of murder.

## ANALYSIS

**I. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY VERDICT.**

**II. THE VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE PRODUCED AT TRIAL.**

**III. THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT IN FAVOR OF SMITH AT THE CLOSE OF THE STATE'S CASE.**

¶10. This Court's standard of review for a JNOV, which challenges the legal sufficiency of the evidence used to support a conviction, is:

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence--not just that supporting the case for the prosecution--in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

*Mangum v. State*, 762 So.2d 337, 341 (Miss.2000)(citations omitted).

¶11. As distinguished from a JNOV, a motion for a new trial asks to vacate the judgment on grounds

related to the weight, not sufficiency, of the evidence. Our standard of review for claims that a conviction is against the overwhelming weight of the evidence is as follows:

> [This Court] must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction "unconscionable injustice."

*Crawford v. State*, 754 So.2d 1211, 1222 (Miss. 2000)(internal citations omitted).

¶12. While Smith suggests that the trial court's denial of his motion for a directed verdict constitutes a separate motion, our case law reflects, and Smith's brief concedes, that a motion for a directed verdict, like a JNOV, is actually an attack on the sufficiency of the evidence. *Jackson v. State*, 784 So.2d 180, 183 (Miss. 2001).

¶13. In the case sub judice, Smith offered no evidence of his own at all to rebut the State's evidence, and he offers no such evidence now. Instead, he merely attempts to highlight what he considers to be inconsistencies in the testimony of prosecution witnesses. Giving the State the benefit of all favorable inferences that may reasonably be drawn from the evidence, however, these inconsistencies do not constitute overwhelming evidence which contradicts the jury's verdict. All three of these issues are without merit.

### IV. THE TRIAL COURT ERRED IN OVERRULING SMITH'S MOTION TO STRIKE MEMBERS OF THE JURY POOL WHO HAD PREVIOUSLY SERVED IN THE TRIAL OF ALVIN BRIDGES, SR.

### V. THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL DUE TO THE EVENTS SURROUNDING THE TRIAL OF ALVIN BRIDGES, SR.

¶14. The gist of these two issues is that Smith was somehow prejudiced because two of his jurors had previously sat on a separate trial in which another, different defendant had escaped police custody and taken hostages, resulting in protests of the courthouse by that defendant's supporters. While the events surrounding the Bridges trial were certainly unusual and controversial, Smith fails to articulate any basis for why *he* would have been prejudiced by the conduct of a defendant in a completely different case.

¶15. On the subject of a trial court's latitude in choosing whether or not to strike jurors for cause, we have said: "A trial court has wide discretion in determining whether to excuse prospective jurors, including those challenged for cause." *Poe v. State*, 739 So.2d 405, 409 ((Miss. 1999). "Because the trial judge, due to his presence during the voir dire process, is in a better position to evaluate the prospective juror's responses, the decision of whether or not to excuse the juror is left to the trial judge's discretion." *Wells v. State,* 698 So.2d 497, 501 (Miss. 1997). "The judicial determination of whether a juror is fair and impartial will not be set aside unless such determination is clearly wrong." *Id* (internal citations omitted).

¶16. In the case sub judice, the trial court took steps to ask each juror whether he or she had been exposed to any media coverage which might impair the juror's ability to render an impartial verdict. Furthermore, Smith cites no authority for the proposition that participation in one high profile case renders a juror hopelessly biased against different defendants in subsequent cases. The trial court did not abuse its discretion in declining to strike the two Bridges jurors for cause.

¶17. This Court has also said that a defendant who fails to seek a mistrial waives that issue on appeal. ***Williams v. State***, 761 So.2d 149, 152 (Miss. 2000). In the case sub judice, Smith not only did not seek a mistrial, he expressly refused one when the trial court offered him one. We conclude that this issue is waived and is without merit.

## VI. THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION S-2.

¶18. Instruction S-2[1] is a lesser-included offense instruction offered by the State which instructed the jury in the elements of manslaughter in the event the jury found Smith not guilty of murder. We have held that a lesser-included offense instruction is warranted " 'if a 'rational' or a 'reasonable' jury could find the defendant not guilty of the principal offense charged in the indictment yet guilty of the lesser-included offense.' " ***Pleasant v. State***, 701 So.2d 799, 804 (Miss. 1997)(internal citations omitted).

¶19. Based on the record before us, a rational jury might have believed that Smith was not guilty of murder but was guilty of manslaughter if, for example, it concluded that he killed Holmes in an act of passion triggered by an argument over a young woman, which was apparently what led to the shooting. In any case, since Smith was not convicted of the lesser included offense (as the defendant in ***Pleasant*** was) but of the greater offense, this issue is moot.

## VII. THE TRIAL COURT ERRED IN DENYING PROPOSED JURY INSTRUCTION D-6.

¶20. Smith next argues that by denying his proffered Instruction D-6,[2] the trial court denied him an instruction on his only defense theory - misidentification. Our standard of review for the denial of jury instructions is clear:

> The standard of review for challenges to jury instructions is as follows:

> Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

***Austin v. State***, 784 So.2d 186, 192 (Miss. 2001)(quoting ***Humphrey v. State***, 759 So.2d 368, 380 (Miss. 2000)). On the specific issue of jury instructions dealing with eyewitness identification, we have said that "the general instruction given to the jury to the effect that the State has the burden of proving each element of the offense charged beyond a reasonable doubt", includes the misidentification issue. ***Robinson v. State***, 473 So.2d 957, 963 (Miss. 1985). As was the case in ***Robinson***, the S-1 jury instruction in the case at bar places upon the State the burden of proving "beyond a reasonable doubt that Marcus Leon Smith . . . willfully and with deliberate design to effect the death of Timothy Holmes . . . did kill and murder Timothy Holmes . . . then you shall find the defendant guilty as charged. If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt then you shall find Marcus Leon Smith not guilty." Consequently, Smith's misidentification theory considered by the jury even in the absence of Instruction D-6. This issue is without merit.

## VIII. THE TRIAL COURT ERRED IN INSTRUCTING THE JURORS TO RETURN TO THE JURY ROOM AND CONTINUE DELIBERATING UNTIL THEY REACHED A

**VERDICT.**

¶21. In *Sharplin v. State*, 330 So.2d 591, 596 (Miss. 1976), this Court approved the following as the jury instruction that should be given by a trial judge to a deadlocked jury:

> I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
>
> Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.

*See also* ***Bolton v. State***, 643 So.2d 942, 944-45(Miss 1994). Having compared the charge promulgated in *Sharplin* to the one actually used by the trial court, we conclude that there is no substantive difference. Indeed, the only differences at all are the substitution of the word "differing" for "different" in the first line and the insertion of the word "will" so that the first sentence of the second paragraph reads "I will remind you" instead of "I remind you." As these differences are negligible and could easily be the result of errors in the transcript, we find this issue to be without merit.

## IX. THE CUMULATIVE EFFECT OF ALL OF THESE ERRORS AT TRIAL CONSTITUTES A VIOLATION OF DUE PROCESS.

¶22. This Court has often ruled that errors which do not compel reversal when standing alone may do so if their cumulative effect renders the trial fundamentally unfair. ***Jenkins v. State***, 607 So.2d 1171, 1183 (Miss. 1992). In the case sub judice, however, all of Smith's assignments of error are totally without merit, and thus there can be no aggregate effect which mandates reversal. This error is also without merit.

## CONCLUSION

¶23. Based on the foregoing, the judgment of the Forrest County Circuit Court is affirmed.

¶24. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED.**

**McRAE AND SMITH, P.JJ., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. PITTMAN, C.J., NOT PARTICIPATING.**

1. Instruction S-2 states in its entirety as follows:

> If you find that the State has failed to prove one of the essential elements of the crime of murder, you should proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all the elements of the lesser crime of manslaughter.

However, notwithstanding this right, it is your duty to accept the law as given you by the court, and if the facts and the law warrant a conviction of the crime of murder, then it is your duty to make such finding uninfluenced by your power to find a lesser offense. This provision is not designed to relieve you from the performance of an unpleasant duty, but is included to prevent a failure of justice if the evidence fails to prove the original charge but does justify a verdict for the lesser crime.

The crime of manslaughter is defined as the killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense.

The Court further instructs the jury that heat of passion is a state of violent and uncontrollable rage engendered by a blow or certain provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts or one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment and terror.

2. Instruction D-6 states in its entirety: "The Court instructs you that if you have a reasonable doubt as to the identity of the alleged shooter in this case you must find the Defendant, Marcus Smith, not guilty."