SOUTHWICK, P.J.,
for the Court.
¶ 1. Eural Smith appeals from his conviction on the charge of armed robbery. Smith alleges a violation of his Fifth Amendment right to remain silent, that certain evidence should have been admitted, and that the evidence does not support conviction. We disagree and affirm.
FACTS
¶ 2. On the morning of August 7, 2000, two men pulled Joe Watts, Sr., from his car as he arrived at his place of employment, Noble Watts Jewelry on the courthouse square in Canton. Mr. Watts, then in his late seventies, was dragged into the bushes and robbed of his personal jewelry at gunpoint. He sustained moderate injuries as a result.
¶ 3. The two thieves initially fled on foot, drawing the attention of Charles Worley, who was walking to his parked vehicle. Believing that something was amiss, Wor-ley asked that his wife, who was sitting in the vehicle’s driver’s seat, follow the two men. A short distance later, Mr. Worley saw a maroon car stop in the road, the two men enter the car, and the car leave the area. Worley wrote down the car’s license plate number and later gave it to police.
¶ 4. For several minutes before the robbery, Robert Chandler, a barber in a shop just a few doors down from the jewelry store, had watched two men walking back and forth on the sidewalk. He reported to police that the men appeared to be “casing” a site for a possible robbery.
¶ 5. After police were called to the scene and Worley’s statement was taken, police located Toshoney Thompson, the registered owner of the vehicle that Worley had identified. Thompson told police he had picked up Eural Smith and Kendrick Williams, friends of his, and given them a ride after they flagged him down. He also told police that Smith and Williams had planned the robbery of Watts in his presence. At trial, Thompson testified that he had actually seen the robbery while parked a short distance away in the parking lot of another barber shop waiting for it to open.
¶ 6. Smith presented no evidence. The jury convicted Smith of armed robbery.
DISCUSSION

1. Fifth Amendment violation

¶ 7. Smith’s first assignment of error concerns the following testimony given by Officer Earl Taylor of the Canton Police Department on direct examination:
Prosecutor: And did you participate in the arrest of the suspects?
Officer: Yes, sir.
Prosecutor: What can you tell the jury about that?
Officer: We received information that Eural Smith was located at 205 E Dobson Avenue. We went to that address ... and found Eural Smith inside the apartment under a bed hiding.
Prosecutor: And what did you do when you found him?
*197 Officer: We placed him under arrest and brought him to headquarters.
Prosecutor: Did he cooperate with you? Officer: I advised him of his rights, but he didn’t want to talk.
¶ 8. Defense counsel objected to this as an impermissible comment upon the defendant’s right not to make a statement. Counsel moved for a mistrial. The jury was excused so that the prosecutor could explain the reason for the question:
Your Honor, the position of the State is that the question was directed toward cooperating during the arrest and trying to solicit information from the witness concerning the relative ease or struggle during the arrest process, and I would submit to the Court that the Court can instruct the jury to disregard that response, and if you’ll give me just a moment, I’ll give you some authorities for that.
¶ 9. The court denied the motion for a mistrial and admonished the jury to ignore the comment. Smith argues this was a violation of his rights under the Fifth Amendment of the United States Constitution. He further argues that it is not curable with an instruction to disregard.
¶ 10. The Fifth Amendment right to refuse to give self-incriminating evidence has long been recognized as a fundamental one. Permitting comment at a criminal trial upon the exercise of that right constitutes a violation of the Fifth Amendment. Griffin v. California, 380 U.S. 609, 613-14, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Beginning over a century ago, the rule in Mississippi was that any comment, no matter how trivial, on a defendant’s exercise of the right to remain silent constituted automatic reversible error. Yarbrough v. State, 70 Miss. 593, 12 So. 551 (1893). This was so even when the prosecution did not intend to make reference to the defendant’s silence; rather, the test was whether the statement could reasonably be construed as a comment upon the defendant’s silence. Peterson v. State, 357 So.2d 113, 115 (Miss.1978) (citing Reddick v. State, 72 Miss. 1008, 16 So. 490 (1895)).
¶ 11. This rule of incurable error has pried its way into some modern cases. See Davis v. State, 767 So.2d 986, 999 (Miss.2000); McGilberry v. State, 741 So.2d 894, 907 (Miss.1999). Equally if not more numerous cases that apply a harmless error analysis will be discussed later. The foundation on which this rule of absolutism was built was a statute, now repealed. “The failure of the accused, in any case, to testify shall not operate to his prejudice, or be commented upon by counsel.” Miss.Code Ann. § 13-1-9 (1972), repealed 1991 Miss. Laws ch. 575, § 141. This statute was strictly construed as requiring automatic reversal under all circumstances once comment on the defendant’s silence had been made. Lee v. State, 435 So.2d 674, 677 (Miss.1983).
¶ 12. Though the old doctrine is on occasion still cited, this State’s appellate courts have also applied the United States Supreme Court’s analysis with respect to error under the Fifth Amendment. Commenting upon a defendant’s silence violates the prohibition against compelled incrimination, but it may be a constitutional error which, in the setting of a particular case, is harmless. Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
¶ 13. The Chapman court fashioned the rule that federal constitutional error can be held harmless if the reviewing court is able to declare it was harmless beyond a reasonable doubt. Id. at 24, 87 S.Ct. 824. If there exists a reasonable possibility the error contributed to the conviction, it cannot be deemed harmless. Id. The Missis *198 sippi Supreme Court has recognized the primacy of the Chapman analysis on this issue of ■ constitutional law. Williams v. State, 761 So.2d 149, 154 (Miss.2000). The analysis has been applied on many occasions. Conley v. State, 790 So.2d 773, 793 (Miss.2001); Williams v. State, 761 So.2d 149, 154 (Miss.2000); Palm v. State, 748 So.2d 135, 143 (Miss.1999); Taylor v. State, 672 So.2d 1246, 1266-67 (Miss.1996).
¶ 14. Even before this state’s self-incrimination statute was repealed, the Supreme Court applied Chapman while simultaneously distinguishing the absolute rule of incurable error on the facts of the case. Lee, 435 So.2d at 677-78. With the repeal of section 13-1-9, the uneasy balancing of conflicting old and new rules is no longer necessary. Rather, we undertake de novo review to determine the harmlessness of such1 errors. Palm, 748 So.2d at 143.
¶ 15. Another reason for not giving undue weight to the older case authorities is that the Supreme Court has in another context determined that the admissibility of evidence is a matter solely within the prerogatives, of the judicial branch and cannot be controlled by statute. Whitehurst v. State, 540 So.2d 1319, 1324 (Miss.1989) (in conflict between a statutory bar and an evidentiary rule that evidence was admissible, the Rules of Evidence control over a statute). This judicial authority would apply equally to the effect of improperly heard evidence. Thus even had the statute not been repealed, the conclusion that it could effectively require reversal would have needed reconsideration.
¶ 16. On the record before us, we cannot say that the comment that Smith declined to give a statement upon arrest contributed in any way to his conviction. Smith was identified by a co-indictee; the facts of the crime were largely beyond dispute. The statement was harmless.
¶ 17. We also note that the question apparently was an attempt to elicit that Smith resisted arrest. An unexpected response was received. The prosecutor’s lack of improper intent does not affect the harmlessness, but it does reduce the need for further corrective action. “If a prosecuting attorney, who is presumed to know better, persists in making erroneous and prejudicial remarks in his argument before the jury, then the trial court should deal harshly with him to the extent of sanctions, reprimands and contempt.” McGil-berry, 741 So.2d at 927. Those considerations are inapplicable.

2. Exclusion of evidence

¶ 18. Smith next alleges the trial court erred in failing to admit documentary evidence of a murder indictment against one of the witnesses, Kendrick Williams. Williams had been indicted in another case unrelated to the robbery of Joe Watts. The charges against Williams were dismissed as part of his plea agreement in exchange for his testimony against Smith at trial. Defense counsel cross-examined Williams at some length regarding the arrangement before asking that the indictment be entered into evidence. The State objected and a bench conference was had off the record. At the conclusion of the conference, the court sustained the objection to admitting the indictment.
¶ 19. Smith claims he was prejudiced by the exclusion of the indictment as it tended to show Williams lacked credibility and that he had a motive to lie. Evidence which tends to show such bias is admissible. M.R.E. 616. However, evidence which is needlessly cumulative may be excluded by the court. M.R.E. 403. Whether to admit or exclude evidence is a matter within the discretion of the trial court. Thompson Machinery Commerce Corp. v. *199 Wallace, 687 So.2d 149, 152 (Miss.1997). Reversal, consequently, is only for an abuse of that discretion.
¶ 20. The exclusion of the document could not have prejudiced Smith. Defense counsel ably cross-examined Williams and read to the jury the relevant portion of a transcript of Williams’s plea hearing. The district attorney stated that the murder indictment was being dismissed. In exchange, Williams was to testify against Smith. The jury certainly understood without having a copy of the indictment that the dismissal of the murder charge against Williams was contingent upon the district attorney’s satisfaction with Williams’s testimony against Smith.
¶ 21. Williams’s potential motive to lie was shown. The indictment was irrelevant. Although the trial court did not state the ground for sustaining the objection, we find that the evidence was cumulative and the trial court did not abuse its discretion in excluding the indictment.

8. Weight of the evidence

¶ 22. Finally, Smith argues the verdict was against the overwhelming weight of the evidence. He contends there was no evidence to connect him with the crime and no witness could positively identify him. In essence, he challenges both the weight and sufficiency of the evidence presented against him. In reviewing the sufficiency of evidence, we take as true all evidence supporting or tending to support the verdict, as well as all reasonable inferences to be drawn from that evidence. Harrell v. State, 583 So.2d 963, 964 (Miss.1991). Likewise, in looking at the weight of the evidence, we take the evidence in the light most favorable to the verdict and reverse only where we find that no reasonable, hypothetical juror could have found the defendant guilty. Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983).
¶ 23. There was sufficient and weighty evidence consistent with guilt. Taking as true the testimony presented, Smith was a principal in both the planning and execution of this robbery. The weight to be given the testimony of two co-indictees is a matter of credibility left in the jury’s hands.
¶ 24. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OP CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
McMlLLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.